# UNITED STATE DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

Edward E. Kopko, Esq.
Edward E. Kopko, Lawyer, P.C.
Attorney for Plaintiff, Cadji Ferguson
308 N Tioga St., 2nd Floor
Ithaca, New York 14850
(607) 269-1300; (607) 269-1301 fax
office@kopko.law

CADJI FERGUSON,

                    Plaintiff,

v.

BENJAMIN BUCK, ZACHARY DORN,
GEORGE DUPAY, and GREGORY
HERZ,

                    Defendants.

Index No. 3:22-cv-00516-LEK-ML

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT

Plaintiff, Cadji Ferguson, by and through his attorney, Edward E. Kopko, Esq., asserts a claim against the aforementioned Defendants upon causes of action stated as follows:

## INTRODUCTION

1. This is a § 1983 action seeking monetary damages and injunctive relief for acts of excessive force and failure to intervene the Plaintiff, Cadji Ferguson ("Ferguson").

2. On April 6, 2019, Ithaca Police officers responded to an altercation taking place late at night in downtown Ithaca, which ended in the arrest of Ferguson and Rose DeGroat ("DeGroat").

3. The underlying altercation started when a white male, Joseph Ming ("Ming") made non-consensual sexual advances towards L.S., a friend of Ferguson, an African-American, and DeGroat, despite Ferguson repeatedly telling Ming to stop his actions.

4. After Ming continued to persist, Ferguson resorted to physical efforts in attempt to get Ming away from L.S., merely acting to protect L.S. from what both L.S., Ferguson, and the rest of the group believed to be a situation of imminent physical danger.

5. Ming continued to persist, responding hostilely to Ferguson and fighting with him.

6. Meanwhile, a few hundred feet away, a young woman approached Defendants Buck, Dorn, DuPay, and Herz, who were working within their regular capacities as police officers for the City of Ithaca.  The woman, upon information and belief, alerted the Defendants to the altercation.

7. Immediately, Defendants Buck, Dorn, DuPay, and Herz ran over to where Ferguson and Ming were with their tasers already deployed.

8. Despite the aggressions of Ming, and despite Ferguson acting to defend L.S., DuPay grabbed Ferguson and swung him to the ground as Defendant Herz tased him. Meanwhile Defendants Buck and Dorn collectively tackled DeGroat.

9. Both Ferguson and DeGroat were held on the ground for minutes, while no officer even laid a finger on Ming.

10. Both Ferguson and DeGroat were then arrested.  Ferguson was charged with disorderly conduct and DeGroat with assault, despite neither of them conducting

such acts.  They were then prosecuted until the Tompkins County Court granted a motion to dismiss the charges against DeGroat.  Ferguson was acquitted of all charges after a bench trial.

11. Without seeing or knowing the underlying assault by Ming, the defendants assumed that Ferguson, being an African-American, was the instigator, and the defendants assaulted and subdued Ferguson, solely upon their biased, racial-motivated judgment.

12. From the time the Defendants became involved, the events giving way to this Complaint were captured on their body cameras, which were delivered by the prosecutor in connection with discovery underlying Ferguson and DeGroat's former criminal charges, absent footage from Defendant Buck, whose body camera footage from during these incidents, if any, was precluded from discovery.  A copy of Defendant's Dorn, DuPay, and Herz's body camera footage from the incident will be mailed to the Court and Defendants as "Exhibit 1".

## **JURISDISCITON AND VENUE**

13. Ferguson's claims against Defendants are predicated 42 U.S.C. § 1983, deprivation of rights claims, all of which occurred in Tompkins County.

## **IDENTITY OF THE PARTIES**

14. At all times pertinent herein, Plaintiff Ferguson, is a citizen of the United States and a resident of the State of New York, County of Tompkins.

15. At all times pertinent herein, Defendant Benjamin Buck, ("Buck"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

16. At all times pertinent herein, Buck is acting under color of state law in his capacity as a law enforcement officer employed by the Ithaca Police Department.

17. At all times pertinent herein, Buck is acting in the course and general scope of his employment by the Ithaca Police Department, pursuant to the authority given to him by the department and the City of Ithaca and pursuant to its instructions and duty assignments.

18. By virtue of Buck's employment as police officer with the Ithaca Police Department, Buck is a "police officer" as the term is defined in CPL § 1.20(34)(d).

19. As a police officer, Buck, when seizing, arresting, and acting with force against Ferguson, acted under color of law by using the authority vested in him by virtue of his employment with the Ithaca Police Department and by using the arrest procedures, appearance ticket procedures, and preliminarily arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

20. Buck is sued in his individual capacity.

21. At all times pertinent herein, Defendant Zachary Dorn, ("Dorn"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

22. At all times pertinent herein, Dorn is acting under color of state law in his capacity as a law enforcement officer employed by the Ithaca Police Department.

23. At all times pertinent herein, Dorn is acting in the course and general scope of his employment by the Ithaca Police Department, pursuant to the authority given to him by the department and the City of Ithaca and pursuant to its instructions and duty assignments.

24. By virtue of Dorn's employment as police officer with the Ithaca Police Department, Buck is a "police officer" as the term is defined in CPL § 1.20(34)(d).

25. As a police officer, Dorn, when seizing, arresting, and acting with force against Ferguson, acted under color of law by using the authority vested in him by virtue of his employment with the Ithaca Police Department and by using the arrest procedures, appearance ticket procedures, and preliminarily arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

26. Dorn is sued in his individual capacity.

27. At all times pertinent herein, Defendant George DuPay, ("DuPay"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

28. At all times pertinent herein, DuPay is acting under color of state law in his capacity as a law enforcement officer employed by the Ithaca Police Department.

29. At all times pertinent herein, DuPay is acting in the course and general scope of his employment by the Ithaca Police Department, pursuant to the authority given to him by the department and the City of Ithaca and pursuant to its instructions and duty assignments.

30. By virtue of DuPay's employment as police officer with the Ithaca Police Department, Buck is a "police officer" as the term is defined in CPL § 1.20(34)(d).

31. As a police officer, DuPay, when seizing, arresting, and acting with force against Ferguson, acted under color of law by using the authority vested in him by virtue of his employment with the Ithaca Police Department and by using the arrest procedures, appearance ticket procedures, and preliminarily arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

32. DuPay is sued in his individual capacity.

33. At all times pertinent herein, Defendant Gregory Herz, ("Herz"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

34. At all times pertinent herein, Herz is acting under color of state law in his capacity as a law enforcement officer employed by the Ithaca Police Department.

35. At all times pertinent herein, Herz is acting in the course and general scope of his employment by the Ithaca Police Department, pursuant to the authority given to him by the department and the City of Ithaca and pursuant to its instructions and duty assignments.

36. By virtue of Herz's employment as police officer with the Ithaca Police Department, Buck is a "police officer" as the term is defined in CPL § 1.20(34)(d).

37. As a police officer, Herz, when seizing, arresting, and acting with force against Ferguson, acted under color of law by using the authority vested in him by virtue of his employment with the Ithaca Police Department and by using the arrest procedures, appearance ticket procedures, and preliminarily arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

38. Herz is sued in his individual capacity.

## FACTS COMMON TO ALL CLAIMS

### Ferguson attempts to stop a sexual predator

39. On the morning of April 6, 2019, on or around 1:10 am, DeGroat left Casablanca Pizza, a pizza shop located in the "Commons" in downtown Ithaca, with her friends "R.J.", "L.S.", "K.W." and "D.S.", the brother of Ferguson.

40. At all times pertinent herein, the "Commons" is a four-block pedestrian shopping area in downtown Ithaca, with many independently owned and operated shops, restaurants, and other businesses.

41. The group planned to meet Ferguson just outside of Casablanca Pizza.

42. As Ferguson was approaching the group, he saw a stranger who he would later learn to be named Joseph Ming ("Ming") eyeing the group in a manner that Ferguson perceived to be "suspicious."  Ferguson, however, did not take any action towards this individual.

43. Ferguson, DeGroat, D.S., R.J., L.S., and K.W. started to walk eastward down the commons.

44. Ming followed the group, walking very close to them.

45. Ming proceeded to walk directly behind L.S., pressing his pelvis into L.S.'s backside. Ming's actions made the group, and especially L.S., very uncomfortable.

46. L.S. gave no consent to Ming for Ming to press his pelvis into her backside.

47. Ferguson asked his group of friends if anyone knows Ming, to which everyone in the group, feeling uncomfortable by Ming's presence, said no.

48. Ferguson then asked Ming if he knows anyone in Ferguson's group, informing Ming that his predatory actions were unwelcome and non-consensual.

49. Ming, disregarding Ferguson's question said "I'm just here… it's cool," or something to a similar effect.

50. At this point, Ferguson told Ming that he was not welcome, and especially not welcome to press his pelvis into L.S.'s backside.

51. At this point Ming swung a fist at Ferguson.

52. Ferguson, determining that Ming has turned violent after his perceived sexual advances towards L.S., pushed Ming back.

53. Meanwhile, DeGroat is standing out of the way protesting the abhorrent and predatory nature of Ming.

54. Ming then grabbed Ferguson by the jacket, as Ferguson attempted to take it off, then proceeded to swing Ferguson by his jacket.

55. After a few seconds of struggle, Ferguson got his jacket fully off and punched Ming in the face.  Ming went down to the ground.

56. Ming stayed on the ground for a few seconds, before getting back up.

57. The following events are recorded on police body camera footage, which was delivered by the prosecutor in connection with discovery for both DeGroat and Ferguson's criminal case.

58. The body camera footage of Defendant Dorn is stored on a flash drive, "Exhibit 1," titled "AXON_Body_2_Video_2019-04-06_0118_x81344880_(DORN)."

59. The body camera footage of Defendant DuPay is stored on a flash drive, "Exhibit 1," titled "AXON_Body_2_Video_2019-04-06_0118_x8134480_(DuPAY)."

60. The body camera footage of Defendant Herz is stored on a flash drive, "Exhibit 1," titled "AXON_Body_2_Video_2019-04-06_0118_x81169265_(HERZ)."

61. Upon information and belief, Defendant Buck did not have his body camera on during the following events.

62. Alternatively, if Defendant Buck did have his body camera on during the following events, the video was not provided in the prosecutor's discovery in connection with Ferguson and DeGroat's underlying criminal action.

**AXON Body Camera Footage – DeGroat Gets Assaulted for Protesting Ferguson Getting Assaulted for Attempting to Stop a Sexual Predator**

63. Defendants Buck, Dorn, Dupay, and Herz stand at a location on the westward side of the Commons, when a young woman approaches them during a period of time, upon information and belief, moments before the events contained in ¶ 56 of this Complaint.  (Ex. 1 Dorn, 0:16; DuPay, 0:00; Herz 0:18).

64. After conversing with the young woman, Buck, Dorn, DuPay, and Herz collectively take off running towards Ferguson.  (Ex. 1 Dorn, 0:28-0:37; DuPay, 0:00-0:10; Herz 0:18-0:28).

65. While Herz runs, he grabs hold of his taser and continues to run holding it.  Before he approaches Ferguson, who is wearing a red long-sleeve shirt and brown pants, Herz yells "get on the ground" four times, pointing the taser directly at Ferguson.  (Ex. 1 Herz 0:35-0:40).



66. Herz proceeds to approach Ferguson from the back.

67. Meanwhile, DuPay approaches Ferguson and immediately grabs onto his right arm with both of his hands twirling him a full 360 degrees, as Ferguson attempts to move away from Herz' taser which is pointed directly at him.  (Ex. 1, DuPay, 0:18-0:24).



68. As DuPay twirls Ferguson, Herz trips and falls to the ground.

69. The body camera footage of Dorn clearly shows Herz tripping over the legs of DuPay

as he grabs Ferguson.  (Ex. 1, Dorn, 0:38).



70. Upon getting back up, Herz immediately deploys his taser right into Ferguson's back.

(Ex. 1, Herz, 0:43-0:44).



71. DeGroat stands next to Ferguson protesting Ferguson being assaulted and twirled by officer DuPay and tased in the back by officer Herz.

72. Simultaneously, as DuPay swings Ferguson and as he is tased by Herz, Ferguson is smashed to the ground, which he hit with the left side of his face.  (Ex. 1 Dorn, 0:44-0:45, DuPay, 0:24-0:25).

73. DeGroat attempts to assist Ferguson because of the illegal arrest and tries to pull DuPay off of Ferguson believing that his arrest is unlawful, as Ferguson was only involved in the underlying altercation in self-defense against Ming's actions to L.S.

74. Buck pulls DeGroat away from DuPay and Ferguson and slams DeGroat to the ground.  (Ex. 1, Dorn, 0:47-0:49).



75. DeGroat is justified in believing her assault and Ferguson's assault is unlawful and in reaction to Ferguson being tased and tackled to the ground.  (Ex. 1, Dorn, 0:50).

76. Buck wrestles with DeGroat, bending her background over a flowerbed in attempt to pull her back to the ground.

77. Herz then deploys his taser into DeGroat's left side in her rib-cage area.  (Ex. 1, Dorn, 1:00-1:05)



78. Upon information and belief, immediately after being tased, DeGroat is then tackled back to the ground by Buck and Dorn.  At this time, however, upon further information and belief, Dorn's body camera falls off and does not record the next thirty-nine seconds of the altercation.  (Ex. 1, Dorn, 1:08-1:47).

79. Meanwhile Herz continues stands over Ferguson pointing his taser at him (Ex. 1, Herz, 0:51-0:53).

80. DuPay then holds Ferguson on the ground, twisting Ferguson's arm with his right hand, as shown below.  (Ex. 1, DuPay, 0:27-0:32).



81. Next, DuPay turns Ferguson over onto his stomach, as DeGroat is held on the ground by Buck and Dorn (Ex. 1, DuPay 0:33).



82. DuPay then points his taser at the group of bystanders, who are standing about 12-15 feet away and are protesting the apparent arrest of both DeGroat and Ferguson, yelling at them repeatedly to "Get back!  Get back now!".  (Ex. 1, DuPay, 0:35-0:48).



83. Upon information and belief, the group of bystanders, which included D.S., R.J., L.S., and K.W., amongst others, were frightened by having the taser pointed at them while they stood protesting.

84. DuPay then kneels next to Ferguson, who remains still and calm.

85. Meanwhile, DeGroat is screaming and crying, as she justifiably resists the illegal arrest.

86. Herz then proceeds to make his way over to assist Buck and Dorn with DeGroat as DuPay places Ferguson into handcuffs.  (Ex. 1 DuPay 0:54-1:11;  Herz, 0:54-0:58).

87. Upon reaching DeGroat, Herz kneels down and with the accompaniment of either Dorn, whose camera is covered during this time, or Buck, who has no footage, further points his taser at the group of bystanders, continually yelling "Get back!  Get back now!" despite the bystanders standing feet away and evidently not interfering with any of the Defendant's work.  (Ex. 1, Herz, 1:02-1:06).



88. At this time, Herz's body camera becomes covered by his jacket for the next thirty-six seconds, as Buck and Dorn continue to wrestle with DeGroat and, upon information and belief, place her into handcuffs during this time.  (Ex. 1, Herz, 1:08-1:42).

89. DeGroat is screaming and crying, as Herz continues to yell at the bystanders to "get back!".  (Ex. 1, Herz, 1:08-1:42).

90. Incidentally, right around the same time, both Dorn's and Herz's body camera recording resumes, as Herz points his taser, again, at the group of bystanders, while Buck presses his left hand down on DeGroat's back.  (Ex.1, Dorn, 1:45-1:50; Ex. 1, Herz, 1:43-1:52).



91. Then, Herz's body camera goes back to being covered up for the next two minutes.  (Ex. 1, Herz, 1:54-3:56).

92. Meanwhile, DuPay takes a knee on Ferguson's back, despite Ferguson being in handcuffs.  (Ex. 1, Dorn, 1:47).



93. Upon information and belief, from the body camera footage of Dorn, DuPay keels on Ferguson's back for a period of time not less than one minute and eight seconds.  (Ex. 1, Dorn, 1:47-2:55).

94. As Buck and Herz continue to struggle with DeGroat and DuPay keels either on or next to Ferguson, additional officers arrive at the scene directing the bystanders back while Dorn walks around aimlessly.  (Ex. 1, Dorn, 2:04-3:14).

95. Buck directs DeGroat up to a sitting position and, upon information and belief, hurts DeGroat.  Ferguson, taking his left cheek of the ground responds: "Rosie, Rosie, calm down.  Rosie, calm down.  Rosie, calm down.  Calm down, Rosie, it's alright.  Rosie, calm down," before placing his left cheek back on the ground.  (Ex. 1, DuPay, 2:40-2:52).

96. Crying, DeGroat responds, "okay".  (Ex. 1, DuPay, 2:52).

97. Ferguson then says to DuPay, "You guys don't even know what happened!"  (Ex. 1, DuPay, 2:54-2:55).

98. DuPay replies, "I know, the only thing I saw was you take your jacket off and attack someone." (Ex. 1, DuPay, 2:56-2:59).

99. Meanwhile, Buck and Dorn bring DeGroat to her feet. (Ex. 1, Dorn, 3:16).

100.   Ferguson said, "Okay, well you don't know what happened before that! He [Ming] tried to assault my friend… he tried to assault my friend!" (Ex. 1, DuPay, 3:00-3:07).

101.   At this point, DuPay brings Ferguson to his feet. (Ex. 1, DuPay, 3:10).

102.   The Defendants then collectively, with the assistance of other officers, escort Ferguson and DeGroat to the westward side of the commons, both of them to their own respective police cruiser. (Ex. 1, Dorn, 3:30-4:12; DuPay, 3:10-4:00).

103.   When Ferguson arrives at the police cruiser, located to the right of The Cornell Store in the commons, Ferguson tells DuPay, "He [Ming] tried to attack, he's a male predator. He… he's thirty-five years old and tried to attack my friend [L.S.] [?]." (Ex.1, DuPay, 3:59-4:07).

104.   DuPay proceeds to remove the probes from the taser out of Ferguson's back. (Ex. 1, DuPay, 4:55-5:10).

105.   Ferguson proceeds to tells DuPay "I'm really very upset, because you guys tackled me and tased me, and I was not resisting or nothing. (Ex. 1, DuPay, 5:33-5:42).

106.   DuPay replies: "Well, I was the first one to grab you … you started pulling away from me." (Ex.1, DuPay, 5:42-5:48).

18

107.   Ferguson replies back: "I moved away because you guys [?] the taser… he [Herz] was pointing the taser at me."  (Ex. 1, DuPay, 5:48-5:50).

108.   Ferguson continues: "I would not have done that if there was no reason.  He [Ming] tried to attack my friend (L.S.).  He's [Ming]… look at him.  Turn around and look at him [Ming].  No, mister, mister, turn around and look at him.  He's forty-five years old, he tried to touch a twenty-one-year-old.  He came up and grabbed her (L.S.) basically by the pussy, and I'm like 'Mister, that's not alright,' and he's like 'Get the fuck out my face,' he pushed me.  That's the only reason why I hit that man.  To me that's a predator.  That's a fucking predator."  (Ex.1, DuPay, 6:01-6:34).

109.   A few moments later, Ming comes from around the corner of The Cornell Store and, upon information and belief, says something to Ferguson.  Ferguson responds yelling at Ming calling him a "predator".  (Ex. 1, DuPay, 6:55-7:10).

110.   Ferguson is then placed into the police cruiser.  (Ex. 1, DuPay, 7:10).

## **The Prosecution of Ferguson**

111.   Ferguson was arrested and issued an appearance ticket for disorderly conduct (violation).

112.   Hours later, a press release was issued regarding the arrest of Ferguson and DeGroat, stating "Officers witnessed a male subject, later identified as Cadji Ferguson, run across the commons and strike another male subject in the face, knocking him to the ground.  The officers ran towards the fight and attempted to take Ferguson into

custody […]" and that DeGroat was arraigned earlier on resisting arrest for "interfering with the lawful arrest of Ferguson."  (Exhibit 2, Press Release).

113.    At the end of August 2019, Ferguson had a bench trial over his charge of disorderly conduct.  The Honorable Scott Miller of Ithaca City Court acquitted Ferguson of all charges.   (Exhibit 3, Ithaca Voice Article "Cadji Ferguson found not guilty of disorderly conduct in Commons case")

114.    The next month, on September 27, 2019, the Honorable Judge Joseph A. Rowley issued a Decision and Order dismissing all of DeGroat's charges upon a motion for dismissal in the furtherance of justice.  (Exhibit 4, Decision and Order).  The full Decision & Order was published in an article by the Ithaca Voice titled "Judge dismissed charges against Rose DeGroat."  (Exhibit 5, Ithaca Voice Article Per Judge Rowley's decision, the rationale laid in officers' contradictions regarding Ferguson. Rowley's decision, which was published in the Ithaca Voice, an Ithaca Local Newspaper, states the following:

> "Officer Herz testified before the Grand Jury that he made the decision to use his taser on Mr. Ferguson before he reaches him for two reasons.  First, he said he made eye contact with Mr. Ferguson, a man he described as 'small, younger guy', and concluded that he was about to run from the police.  Second, 'he had already used force against someone else – I had no idea the condition, the guy could have been unconscious for all I knew.' […] "He testified that when he looked up, he saw other officers trying unsuccessfully to physically restrain Mr. Ferguson.  Having a clear line of sight to Mr. Ferguson's back, Officer Herz deployed his taser.  "He went down just as picture perfect as we are trained and I immediately went towards him and tried to help take him into custody."
> (Exhibit 5, emphasis added).

"The video evidence contradicts parts of Officer Herz's account.  While Mr. Ferguson did push Mr. Ming to the ground, *Mr. Ming stood up within seconds in clear view of the police and well before any of the officers arrived at the scene.* As the officers approached, Mr. Ming and Mr. Ferguson were essentially squaring off with each other like a couple of boxers.  Neither appeared to have a weapon.  As the police officer arrived, Mr. Ferguson turned away from them and took a couple of steps before he was forcefully grabbed and pushed to the ground by the police.  *There was no time for Mr. Ferguson to hear, understand, or respond to the command that he get on the ground.*  As the two officers sought to physically restrain him, Mr. Ferguson was unarmed and was not fighting with the officers when he was tasered.  He is clearly in a video with one arm free while an officer twisted him around by his other arm. […] Upon careful review of the videotapes, the Court concludes that the Ithaca Police Officers overreacted to the initial situation.  […] The police made no effort to defuse the situation or to simply separate the men while the conflict was sorted out.  They rushed Mr. Ferguson and very aggressively tried to force him to the pavement when he was tasered in the back.  *Officer Hertz was not justified in using a taser on Mr. Ferguson.  His claim that Mr. Ferguson might have knocked Mr. Ming unconscious was clearly not true;* his claim that he could tell Mr. Ferguson was getting ready to run is doubtful; and it is not accurate to characterize Mr. Ferguson's actions as resisting arrest."
(Exhibit 5, emphasis added).

Lastly, the decision states:

"Ms. DeGroat witnessed the police charge toward her friend [Ferguson], forcibly grab him and *inexplicably* taser him.  She saw him collapse to the ground, unable to move.  As soon as Mr. Ferguson was down, a police officer jumped on top of him.  *In the Court's view, Ms. DeGroat reacted instinctively to protect Mr. Ferguson in this fast moving and bewildering situation.*  If not for the regrettable actions of the police, she likely would not have intervened."
(Exhibit 5, emphasis added).

115.    While Ferguson was eventually freed from his malicious prosecution in the furtherance of justice, as of today, he suffers emotional pain and suffering and apprehension of the police.

## COUNT ONE

**CADJI FERGUSON v. BENJAMIN BUCK, ZACHARY DORN, and GREGORY HERZ**
**42 U.S.C. § 1983 – EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND**
**FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

116.    All the allegations of the Complaint are incorporated.

117.    42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia who subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

118.    Ferguson is a citizen of the United States and Buck, Dorn, and Herz are each a "person" and a state actor for the purposes of 42 U.S.C. § 1983.

119.    Buck, Dorn, and Herz, at all times relevant, were acting under the color of state law in their capacity as Ithaca City Police Officers and their acts or omissions constitute conduct within the scope of their official duties or employment.

120.    Ferguson has a clearly established right under the Fourth Amendment to be secure in his person from unreasonably seizure through excessive force. *Graham v. Connor,* 490 U.S. 386, 397 (1989).

121.    Ferguson also has the clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

122.    Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at the time.

123.    A police officer's application of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Graham*, 490 U.S. 386 at 397.

124.    More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (citations and quotation marks omitted).

125.    Buck, Dorn, and Herz actions and use of force, as described in this Complaint, were objectively unreasonable in light of the facts and circumstances confronting them, and therefore violated Ferguson's Fourth Amendment rights.

126.    Buck, Dorn, and Herz actions and use of force, as described in this Complaint, were also malicious and/or involved reckless, callous, and deliberate indifference to Ferguson's federally protected rights.

127.    The force used by Buck, Dorn, and Herz shock the conscience and violated Ferguson's

Fourteenth Amendment Rights.  See *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed.

182 (1952).

128.    Buck, Dorn, and Herz unlawfully seized Ferguson by means of objectively unreasonable,

excessive and conscious-shocking physical force, thereby unreasonably restraining Ferguson

of his freedoms.

129.    Buck, Dorn, and Herz use of physical force against Ferguson was objectively

unreasonably gratuitous, and excessive in light of the facts and circumstances confronting

Ferguson in that:

i.      Ferguson posed no further threat to the situation;

ii.     Ferguson did not interfere with a lawful arrest, but an unlawful one;

iii.    Ferguson was not attempting to flee from the police;

iv.     Buck, Dorn, and Herz assigned their fear of the crowd's reaction to their violence

against Ferguson as an excuse to further harm Ferguson;

v.      Ferguson never engaged in criminal behavior in the presence of Buck, Dorn, or

Herz as her actions towards Ming were an act of self-defense on behalf of L.S.

vi.     Buck, Dorn, and Herz had no authority nor reason to arrest Ferguson;

vii.    Buck, Dorn, and Herz had no authority no reason to throw Ferguson to the

ground;

viii.    Buck, Dorn, and Herz had no authority no reason to throw Ferguson back to the ground after the previously, without authority, threw Ferguson to the ground;

ix.    Herz had no authority nor reason to tase Ferguson.

130.    The force used caused injury to Ferguson including but not limited to scrapes, bruises, taser marks, paint to wrists where handcuffed, and back pain.

131.    Buck, Dorn, and Herz engaged in the conduct described in this Complaint willfully, maliciously, in bad-faith, and in reckless disregard of Ferguson's federally protected constitutional rights.

132.    Buck, Dorn, and Herz did so with shocking and willful indifference to Ferguson's rights and with conscious awareness that they would cause Ferguson severe physical and emotional injuries.

133.    The acts or omissions of Buck, Dorn, and Herz, as described in this Complaint, were moving forces behind Ferguson's injuries.

134.    The acts or omissions of Buck, Dorn, and Herz, as described in this Complaint, intentionally deprived Ferguson of his constitutional rights and caused him other damages.

135.    Buck, Dorn, and Herz are not entitled to qualified immunity for the complained of conduct.

136.    As a proximate result of Buck, Dorn, and Herz's unlawful conduct, Ferguson has suffered actual physical and emotional injuries, and other damages and losses as described in this

Complaint entitling him to compensatory and special damages, in amounts to be determined at trial.

137.    As a further result of Buck, Dorn, and Herz's unlawful conduct, Ferguson has incurred special damages, including medical related expenses and may continue to incur further medical and other special damages, in amounts to be determined at trial.

138.    Ferguson is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interests and costs as allowable by federal law.

139.    Upon information and belief, Buck, Dorn, and Herz will continue in their unlawful conduct, unless and until restrained by this court.

140.    In addition to compensatory, economic, consequential, and special damages, Ferguson is entitled to punitive damages against Buck, Dorn, and Herz under 42 U.S.D.C. § 1983, in that the actions of Buck, Dorn, and Herz were taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of Ferguson.


### COUNT TWO
### CADJI FERGUSON v. GEORGE DuPAY
### 42 U.S.C. § 1983 – FAILURE TO INTERVENE, EXCESSIVE FORCE

141.    All the allegations of the Complaint are incorporated.

142.    DuPay, knew or should have known, or deliberately ignored that Buck, Dorn, and Herz's treatment against Ferguson was a constitutional violation against Ferguson as Buck tackled

Ferguson to the ground while she posed no threat to anyone at the scene and while Ferguson was not interfering with a lawful arrest.

143.   DuPay had reasonable opportunity to intervene and prevent the violation of Ferguson's constitutional rights by Buck, Dorn, and Herz, but failed to act.

144.   DuPay had an affirmative duty to intervene on behalf of Ferguson whose constitutional rights were being violated in the presence of DuPay.

145.   DuPay failed to take any affirmative steps to intervene with Buck, Dorn, and Herz's violations of Ferguson's constitutional rights.

146.   As a result of DuPay's failure to intervene, Ferguson's constitutional rights were violated.

147.   As a result of the foregoing, Ferguson is entitled to compensatory damages in an amount to be determined at trial and is further entitled to punitive damages against Buck, Dorn, and Herz in amount to be determined at trial, plus reasonable attorney's fees, costs, and disbursements of this action.

## **RELIEF REQUESTED**

WHEREFORE, on the first, second, third, and forth cause of action, and as a result of the foregoing, Plaintiff Cadji Ferguson prays that this Court enter judgment for Plaintiff and against each of the Defendants and grant:

a.   Monetary damages for past and future pain and suffering in an amount to be determined at trial but believed to be not less than five-hundred thousand dollars;

b.  Punitive damages against all Defendants;

c.  A permanent injunction against Defendants Buck, Dorn, DuPay, and Herz, from engaging use of excessive force and failure to intervene;

d.  Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

e.  Pre- and post-judgment interest at the lawful rate; and

f.  Any further relief that this court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Edward E. Kopko, Esq.
Edward E. Kopko, Lawyer, P.C.,
Attorney for Plaintiff
308 N. Tioga Street, Second Floor
Ithaca, New York 14850
607.269.1300; Fax 607.269.1301
office@kopko.law

EXHIBIT 1

BODY CAMERA

FOOTAGE

(PLACEHOLDER)



Ithaca Police Department
120 East Clinton Street
Ithaca, New York 14850 USA

# EX. 2

Pete Tyler, Chief of Police                              Vincent Monticello, Deputy Chief of Police
Police Administration/Records:  607-272-9973            Dennis Nayor, Deputy Chief of Police

## MEDIA RELEASE

| Prepared by:  Sergeant David Amaro | Date Prepared:  April 6, 2019 |
|---|---|
| Type of Incident: Attempted Assault of a Police Officer | |
| Date and Time of Incident: April 6, 2019 at about 1:20 am | |
| Location of Incident: Ithaca Commons | |

| Defendant:  Rose Degroat | Age: 22 | Address:  Ithaca, NY |
|---|---|---|
| Charges:<br>Attempted Assault in the Second Degree, Class E Felony, 2 counts<br>Resisting Arrest, Class A Misdemeanor, 1 count | | |

| Defendant: Cadji Furgeson | Age: 26 | Address:  Ithaca, NY |
|---|---|---|
| Charge:<br>Disorderly Conduct, Violation | | |

| Defendant: ███████ | Age: 21 | Address:  Ithaca, NY |
|---|---|---|
| Charge:<br>Disorderly Conduct, Violation | | |

Around 1:20 am on Saturday April 6, 2019, several uniformed Ithaca Police Department Officers were on foot patrol on the Ithaca Commons.  Officers witnessed a male subject, later identified as Cadji Furgeson, run across the commons and strike another male subject in the face, knocking him to the ground.  The officers ran towards the fight and attempted to take Ferguson into custody.  While doing so, a bystander, later identified as Rose Degroat, attacked an officer from behind repeatedly striking him in the head.  Degroat then struck a second officer in the face before being taken into custody.  The first officer experienced headaches and was treated by Bangs Ambulance.  The second officer sustained cuts to his face and declined further treatment. Ferguson was secured in police custody.

The incident caused numerous bystanders, most of whom were uninvolved in the original incident, to attempt various forms of interference in the officers' attempts to make the lawful

**People arrested by the Ithaca Police Department are presumed innocent until proven guilty in a court of law.**

2

DETAILS (continued)

arrests.  Police used discretion in addressing the crowd and only one additional person, later identified as ███████████ was arrested for Disorderly Conduct.  Due to the chaotic scene, the Tompkins County Sheriff's Office responded to the area to provide additional personnel.

Degroat was arraigned the morning of April 6, 2019 in Ithaca City Court on two counts of Attempted Assault in the Second Degree, Class E Felony, for attacking the uniformed Police Officers and one count of Resisting Arrest, Class A Misdemeanor, for interfering with the lawful arrest of Furgeson.  Degroat was released on her own Recognizance and is scheduled to re-appear in Ithaca City Court on April 17, 2019 at 9:00 am.  Furgeson and ████████ were each charged with Disorderly Conduct, a Violation.  Both were released on Appearance Tickets returnable to Ithaca City Court on April 24, 2019 at 9:00 am.

EX. 3

Sign up to receive the Ithaca Voice's COVID-19 Daily Brief in your inbox every week night.    Your email address..    SUBSC 



(https://ithacavoice.com)

**Donate Now**

☰    **The Ithaca Voice**    🔍



# Cadji Ferguson found not guilty of disorderly conduct in Commons case

CRIME & COURTS (HTTPS://ITHACAVOICE.COM/CATEGORY/CRIME-COURTS/), FEATURED (HTTPS://ITHACAVOICE.COM/CATEGORY/FEATURED/) , ITHACA (HTTPS://ITHACAVOICE.COM/CATEGORY/NEWS/ITHACA/) , LATEST NEWS (HTTPS://ITHACAVOICE.COM/CATEGORY/LATEST-NEWS/) , NEWS (HTTPS://ITHACAVOICE.COM/CATEGORY/NEWS/) / AUGUST 30, 2019 / BY DEVON MAGLIOZZI (HTTPS://ITHACAVOICE.COM/AUTHOR/DEVON-MAGLIOZZI/)

↑

ITHACA, N.Y. — Cadji Ferguson, 26, who was charged in connection with an altercation on the Commons in April, was found not guilty Friday of disorderly conduct.

Ferguson was on trial for the charge of disorderly conduct, a violation, after Ithaca Police Department officers arrested him on the Ithaca Commons on April 6. Officers observed Ferguson strike a man, later identified as Joseph Ming. Body camera footage captured Ferguson repeatedly calling Ming "a predator" and witnesses testified Friday that Ming shoved Ferguson and his friend Rose de Groat before Ferguson struck him. Ferguson's attorney, Seth Peacock, argued his client was justified in punching a man who was threatening.

Ferguson had a bench trial, which means the case is heard and decided by a judge, without a jury. The courtroom was full of people supporting Ferguson, from groups including Black Lives Matter - Ithaca, Showing Up for Racial Justice and the Multicultural Resource Center.

**YOUR LOCAL CRIME AND COURTS NEWS IS MADE POSSIBLE WITH SUPPORT FROM:**

↑


(https://www.triphammermarketplace.com)


(http://cleanteamithaca.com)


(https://www.rasaspa.com)


(https://www.northsidewine.com)


(https://stronghandsithaca.com)


(https://www.cayugamed.org)


(https://www.tompkinstrust.com)


(https://hiredhandsmoving.com)


(https://www.alternatives.org)


(https://ithacahummus.com)


(https://www.bwsupply.com)


(https://carolbushberg.com)


(https://ithacavoice.com/2020/02/edward-
e-kopko-lawyer-p-c/)


(https://www.tompkinscortland.edu)


(https://www.visionsfcu.org)


(https://www.maguirecars.com)

(https://cinemapolis.org)

(https://www.ithacamarket.com)

Ithaca City Court Judge Scott Miller said Friday the prosecution did not meet its burden to prove that Ferguson was unjustified in striking Ming. Further, Miller said the prosecution did not prove beyond a reasonable doubt that Ferguson engaged in a fight on the Ithaca Commons with intent to create a public inconvenience or alarm, or with reckless disregard for the possibility of creating public alarm. The altercation, Miller said, was confined to Ferguson, Ming, and a small group of Ferguson's friends.



(https://i0.wp.com/ithacavoice.com/wp-content/uploads/2019/06/IMG_0278.jpg?
ssl=1)

*Supporters outside a June hearing in Ferguson's case. (Devon Magliozzi/Ithaca Voice)*

In court Friday, Assistant District Attorney Amelia Carol Christian called
officer Gregory Herz to the stand. Herz described Ferguson's punch as a
"haymaker," a word Christian repeated in her closing arguments. While
Herz was on the stand, Christian replayed footage from a Commons
surveillance camera as the officer narrated. He said he observed
Ferguson throw a punch, ran toward him along with three other
officers, and took him into custody.

ADVERTISEMENT

Under cross-examination, Herz faced questions from Peacock about why he didn't question or take a statement from Ming, who continued to argue with Ferguson as he was handcuffed and led to a police vehicle. Herz said Ming was too intoxicated to give an accurate statement.

"You do not take a statement from someone who is intoxicated to that degree," Herz said on the witness stand.

Peacock called Ferguson and his brother, Dominique Stevenson, to testify about their recollection of the evening. Both described Ming as drunk and threatening. The brothers were standing with a group of friends that included Rose de Groat and three others. They said Ming approached and began standing behind one friend, with his body just a couple of inches from her. Both said Ming's groin was close to their friend's rear. Ferguson testified that he thought at the time Ming touched his friend, but couldn't be sure whether contact occurred.

According to testimony from both Ferguson and Stevenson, Ferguson asked Ming — who Stevenson described as a middle aged white man, about 220 pounds and 6'3" or 6'4" — why he was standing in their group. They said Ming didn't answer Ferguson's questions about who he was or why he was hovering. Ferguson said he asked, "Are you a predator?" at which point Ming appeared angry, squaring off and puffing his chest.

Ferguson and Stevenson testified that Ming shoved Ferguson, placing a hand on his chest, and Ferguson pushed him back. Ming shoved de Groat and swung Ferguson by his jacket as an argument ensued, both said in court, and then did not back away from the group. It was at that point that Ferguson hit him, he said. Surveillance footage reviewed in court shows that Ming fell to the ground and then immediately got up, while Ferguson backed away and did not continue a fight. Moments later police officers arrived on the scene and tased Ferguson before handcuffing him, while they left Ming alone.

ADVERTISEMENT

↑

In his closing argument, Peacock described Ferguson's action toward Ming as reasonable, saying repeatedly that he did what anyone in his situation would have done. He said Ming hovering inches from Ferguson's friend "was enough to constitute a threat" whether he touched her or not, and that Ferguson responded reasonably by verbally confronting Ming and responding in kind when Ming shoved him.

Christian rebutted the defense's narrative by arguing Ferguson escalated the use of force more than was justified. She said the conflict between Ming and Ferguson had ended by the time Ferguson ran toward him and punched him. Miller judged the prosecution did not provide sufficient evidence to prove Ferguson's actions were unjustified.

Ferguson is now cleared of all charges related to the April 6 incident. Rose de Groat continues to face felony charges in Tompkins County Court (https://ithacavoice.com/2019/08/commons-case-headed-to-trial-unless-last-minute-deal-is-reached/). In a hearing on Monday, her attorney rejected a plea agreement offered by the district attorney, so the case is slated to go to a jury trial beginning Nov. 4.

**Share this:**



(https://ithacavoice.com/2019/08/cadji-ferguson-found-not-guilty-in-commons-case/?share=facebook&nb=1)

(https://ithacavoice.com/2019/08/cadji-ferguson-found-not-guilty-in-commons-case/?share=twitter&nb=1)

(https://ithacavoice.com/2019/08/cadji-ferguson-found-not-guilty-in-commons-case/?share=reddit&nb=1)

(https://ithacavoice.com/2019/08/cadji-ferguson-found-not-guilty-in-commons-case/?share=linkedin&nb=1)

(https://ithacavoice.com/2019/08/cadji-ferguson-found-not-guilty-in-commons-case/#print)   ⌣ More

TAGS    COMMONS INCIDENT (HTTPS://ITHACAVOICE.COM/TAG/COMMONS-INCIDENT/)

ITHACA CITY COURT (HTTPS://ITHACAVOICE.COM/TAG/ITHACA-CITY-COURT/)

JUDGE SCOTT MILLER (HTTPS://ITHACAVOICE.COM/TAG/JUDGE-SCOTT-MILLER/)

SETH PEACOCK (HTTPS://ITHACAVOICE.COM/TAG/SETH-PEACOCK/)



✉ (mailto:dmagliozzi@ithacavoice.com) Devon Magliozzi (https://ithacavoice.com/author/devon-magliozzi/) (https://ithacavoice.com/author/devon-magliozzi/)

Devon Magliozzi is a reporter for the Ithaca Voice. Questions? Story tips? Contact her at dmagliozzi@ithacavoice.com or 607-391-0328.

## LISTEN STARTING MONDAY, FEBRUARY 1



(https://i0.wp.com/ithacavoice.com/wp-content/uploads/2021/01/WWF_Logo-01-copy-5.png)

ADVERTISEMENT

↑

## The Ithaca Voice

The Ithaca Voice is an online-only nonprofit news site serving Ithaca and Tompkins County. Launched in June 2014, it is a free and independent source of journalism.

⚲ 102. E. MLK Jr Street/The Commons Suite #2 Ithaca, NY 14850

Call the newsroom at (607) 391-0327 or email tips@ithacavoice.com.

### CONNECT WITH US

About Us (https://ithacavoice.com/about-us/)
Contact Us (https://ithacavoice.com/contact-us/)
Have a story tip? (https://ithacavoice.com/tips/)
Advertising and Sponsorship Opportunities (https://ithacavoice.com/sponsor-advertise/)

(https://facebook.com/theithacavoice)

🐦 (https://twitter.com/ithacavoice)

📷 (https://instagram.com/ithacavoice)

▶ (https://www.youtube.com/channel/UC6z0X1VDFsKKZmMlAV9vk8A)

**IV** **The Ithaca Voice** 🐦 Follow
(https://twitter.com/ithacavoice)

**IV** **The Ithaca Voice (https://twitter.com/ithacavoice)**

@ithacavoice (https://twitter.com/ithacavoice) ·

26 Mar (https://twitter.com/ithacavoice/status/1375549791044841475)  🐦

Aurora Streatery coming back on April 1, one block of Aurora Street will close for summer #twithaca (https://twitter.com/hashtag/twithaca)

https://ithacavoice.com/2021/03/aurora-streatery-coming-back... (https://ithacavoice.com/2021/03/aurora-streatery-coming-back-on-april-1-one-block-of-aurora-street-will-close-for-summer/)

♡ (https://twitter.com/intent/tweet?in_reply_to=1375549791044841475&related=ithacavoice)

↺ (https://twitter.com/intent/retweet?tweet_id=1375549791044841475&related=ithacavoice)                    7

♡ (https://twitter.com/intent/like?tweet_id=1375549791044841475&related=ithacavoice)                    24

Twitter  (https://twitter.com/ithacavoice/status/1375549791044841475)

Load More...

© Copyright The Ithaca Voice (//your-site-url). All rights reserved.

EX. 4

STATE OF NEW YORK

COUNTY COURT : COUNTY OF TOMPKINS

----------------------------------------------------------------

PEOPLE OF THE STATE OF NEW YORK,

|  |  |
|---|---|
| Plaintiff, | DECISION and ORDER |
| vs. | Ind. No. 2019-0042 |

ROSE E. DEGROAT,

Defendant.

----------------------------------------------------------------


Defendant Rose DeGroat is charged by indictment with Attempted Assault in the 2nd Degree (2 counts), Obstructing Governmental Administration in the 2nd Degree, and Resisting Arrest. By Notice of Motion filed August 26, 2019, defendant, through her attorneys, Edward Kopko and Jerome Mayersak, seek dismissal of the indictment in furtherance of justice pursuant to Criminal Procedure Law §210.40. By Response dated September 9, 2019, the People, by Deputy District Attorney Andrew Bonavia, consent to dismissal of both Attempted Assault 2nd charges but oppose dismissal of the remaining two misdemeanor charges.

<u>Dismissal in Furtherance of Justice</u>

Criminal Procedure Law section 210.40 states, in relevant part:

1. An indictment or any count thereof may be dismissed in furtherance of justice… when, even though there may be no basis for dismissal as a matter of law …such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice.

1

"A court is authorized to dismiss criminal charges in the interest of justice if, upon considering the criteria set forth in CPL 210.40 and balancing the interest of the individual against those of the public, it concludes that the reasons favoring dismissal are both real and compelling" (People v Kennard, 266 A.D.2d 718, 719 lv. denied 94 N.Y.2d 864 [3rd dept. 1999]). Upon the analysis set forth below, it is clear that genuine and compelling reasons support dismissal of the charges.

The court makes the following findings based on the record before it, including multiple video recordings of the incident that led to these charges, as required under CPL §210.40 (1) (a-j).

In the early morning hours of April 6, 2019, two men, Cadji Ferguson and Joseph Ming, began arguing and scuffling with each other on the Ithaca Commons. Although other people were present and may have been involved, it is impossible to tell from the videos what role they may have played. The reason for the dispute is not known to the Court. At one point, Mr. Ming can be seen roughly pushing Mr. Ferguson away from himself. Mr. Ferguson then took off his jacket and charged Mr. Ming, knocking him to the ground. Mr. Ming immediately got up, apparently uninjured.

Four Ithaca Police officers were nearby and several witnessed Mr. Ferguson push Mr. Ming down. As a group, they rushed to apprehend Mr. Ferguson with Officer Herz in the lead. Officer Herz testified before the Grand Jury that he made the decision to use his taser on Mr. Ferguson before he reached him for two reasons. First, he said he made eye contact with Mr. Ferguson, a man he described as a "small, younger guy", and concluded that he was about to run from the police. Second, "he had already used force against someone else – I had no idea the condition, the guy could have been unconscious for all I knew." As he approached Mr. Ferguson, Officer Herz recalled ordering him to "Get down on the ground. Get down on the ground." Per Officer Herz, Mr. Ferguson did not comply but tried to get away by going behind other people in the crowd. As another officer grabbed Mr. Ferguson, Officer Herz fell to the ground, having unknowingly been tripped by a

2

fellow officer. He testified that when he looked up he saw other officers trying unsuccessfully to physically restrain Mr. Ferguson. Having a clear line of sight to Mr. Ferguson's back, Officer Herz deployed his taser. "He went down just as picture perfect as we are trained and I immediately went towards him and tried to help take him into custody."

The video evidence contradicts parts of Officer Herz's account. While Mr. Ferguson did push Mr. Ming to the ground, Mr. Ming stood up within seconds in clear view of the police and well before any of the officers arrived at the scene. As the officers approached, Mr. Ming and Mr. Ferguson were essentially squaring off with each other like a couple of boxers. Neither appeared to have a weapon. As the police officers arrived, Mr. Ferguson turned away from them and took a couple of steps before he was forcefully grabbed and pushed toward the ground by the police. There was no time for Mr. Ferguson to hear, understand, or respond to the command that he get on the ground. As two officers sought to physically restrain him, Mr. Ferguson suddenly dropped straight to the ground, paralyzed by the taser. Mr. Ferguson was unarmed and was not fighting with the officers when he was tasered. He is clearly visible in a video with one arm free while an officer twisted him around by his other arm.

Ms. DeGroat is visible in the videos apparently attempting to calm Mr. Ferguson when the police descended on him. She was moving toward Mr. Ferguson as he was pushed by the police when he suddenly collapsed. An officer immediately got on top of Mr. Ferguson to handcuff him. As Ms. DeGroat threw herself into the melee in defense of Mr. Ferguson, three officers went after her and forcibly took her to the pavement face first. Ms. DeGroat is seen struggling with the officers as they subdued and handcuffed her.

(a) the seriousness and circumstances of the offense;

Upon the dismissal of the Attempted Assault 2nd charges, defendant remains charged with Obstructing Governmental Administration and Resisting Arrest, both Class

3

"A" misdemeanors in New York State, punishable by up to one year of incarceration. Defendant appears to have been an interested bystander to a fight between her friend and Mr. Ming. She is charged for her actions in response to the aggressively forceful manner by which the police subdued Mr. Ferguson.

Ms. DeGroat witnessed the police charge toward her friend, forcibly grab him and inexplicably taser him. She saw him collapse to the ground, unable to move. As soon as Mr. Ferguson was down, a police officer jumped on top of him. In the Court's view, Ms. DeGroat reacted instinctively to protect Mr. Ferguson in this fast moving and bewildering situation. If not for the regrettable actions of the police, she likely would not have intervened. When officers sought to restrain her, she forcefully struggled against them. Ultimately three officers were involved in forcing her to the ground face down.

(b) the extent of harm caused by the offense;

Ithaca Police Officer Benjamin Buck received several scratches to the face during the melee. He did not require medical attention nor miss any time from work. Another officer complained of a headache.

(c) the evidence of guilt, whether admissible or inadmissible at trial;

There is substantial evidence that defendant sought to interfere with the arrest of Mr. Ferguson and to prevent her own arrest.

(d) the history, character and condition of the defendant;

Ms. DeGroat is a lifetime Ithaca resident with no prior criminal history.

(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;

4

Upon careful review of the videotapes, the Court concludes that the Ithaca Police Officers overreacted to the initial situation. Although they did see Mr. Ferguson push Mr. Ming down, both men were on their feet and facing each other when the police rushed in to detain Mr. Ferguson. The police made no effort to defuse the situation or to simply separate the men while the conflict was sorted out. They rushed Mr. Ferguson and very aggressively tried to force him to the pavement when he was tasered in the back. Officer Herz was not justified in using a taser on Mr. Ferguson. His claim that Mr. Ferguson might have knocked Mr. Ming unconscious was clearly not true; his claim that he could tell Mr. Ferguson was getting ready to run is doubtful; and it is not accurate to characterize Mr. Ferguson's actions as resisting arrest.

(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense;

If defendant were convicted of either crime, the only purpose of a sentence would be punishment. There is no indication that she is in need of rehabilitation or supervision. The facts of this situation were unique and not indicative of any tendency toward unlawful behavior.

(g) the impact of a dismissal upon the confidence of the public in the criminal justice system;

This factor is difficult to assess. It is likely that some members of the public will disagree with a dismissal and support the police conduct. It is clear that others will see a dismissal as a just result.

The prosecuting attorney has demonstrated ambivalence about the case. After initially reducing the charges to a misdemeanor level, he sought and obtained felony charges through Grand Jury indictment. He subsequently proposed to resolve the entire case against defendant with a plea to a disorderly conduct violation, an offer rejected by defendant.

5

(h) the impact of a dismissal on the safety or welfare of the community;

The Court sees no negative impact on the safety or welfare of the community based upon this dismissal.

(i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion;

It is highly likely that the officers involved oppose this dismissal.

(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose.

None.

Conclusion

Based upon the foregoing analyses, the court finds the Defendant's motion is granted. There are exceptional circumstances present here that warrant the relief sought.

This constitutes the Judgment and Order of the Court entered upon notice to all parties.

ENTER

Dated: September 27, 2019

_____

JOHN C. ROWLEY

TOMPKINS COUNTY JUDGE

6

EX. 5



# Judge dismisses charges against Rose DeGroat

by **Kelsey O'Connor**
September 27, 2019



Demonstration in front of Tompkins County Courthouse on Friday September 20, 2019.

ITHACA, N.Y. — Judge John Rowley has dismissed all charges against Rose DeGroat, who was facing two counts of felony second-degree attempted assault and two misdemeanors in connection with an altercation that took place on the Ithaca Commons in April.



The case has garnered significant public attention and outcry, with continuous protests and rallies. Members of the community have



Rose DeGroat speaks at a demonstration in front of Tompkins County Courthouse on Friday September 20, 2019. (Jacob Mroczek/The Ithaca Voice)

packed every court appearance for DeGroat, no matter how small, and for Cadji Ferguson, whose charges were also recently dismissed.

• **Related: Cadji Ferguson found not guilty of disorderly conduct in Commons case**

In response to an omnibus motion filed by attorneys Edward Kopko and Jerome Mayersak, Judge John Rowley dismissed DeGroat's indictment Friday morning.

On Friday, Kopko said his reaction is "bittersweet," as he said he believes charges should not have been brought in the first place. He credited the public's strong response over the past five months to helping get the charges dropped.

"Frankly, the community outrage about this led to this good result," Kopko said. "This is the type of community that we want to live in."

The Ithaca Police Department initially charged DeGroat with two counts of second-degree attempted assault and obstructing governmental administration. As a result of the incident, as noted in the order, one officer reported receiving several scratches on his face but did not require medical attention. The other reported having a headache.

Here is an excerpt describing the events, as outlined in Rowley's order, that led up to the arrests of DeGroat and Ferguson:

In the early morning hours of April 6, 2019, two men, Cadji Ferguson and Joseph Ming, began arguing and scuffling with each other on the Ithaca Commons. Although other people were present and may have been involved, it is impossible to tell from the videos what role they may have played. The reason for the dispute is not known to the Court. At one point, Mr. Ming can be seen roughly pushing Mr. Ferguson away from himself. Mr. Ferguson then took off his jacket and charged Mr. Ming, knocking him to the ground. Mr. Ming immediately got up, apparently uninjured.

Four Ithaca Police officers were nearby and several witnessed Mr. Ferguson push Mr. Ming down. As a group, they rushed to apprehend Mr. Ferguson with Officer Herz in the lead. Officer Herz testified before the Grand Jury that he made the decision to use his taser on Mr. Ferguson before he reached him for two reasons. First, he said he made eye contact with Mr. Ferguson, a man he described as a "small, younger guy", and concluded that he was about to run from the police. Second, "he had already used force against someone else – I had no idea the condition, the guy could have been unconscious for all I knew." As he approached Mr. Ferguson, Officer Herz recalled ordering him to "Get down on the ground. Get down on the ground." Per Officer Herz, Mr. Ferguson did not comply but tried to get away by going behind other people in the crowd. As another officer grabbed Mr. Ferguson, Officer Herz fell to the ground, having unknowingly been tripped by a fellow officer. He testified that when he looked up he saw other officers trying unsuccessfully to physically restrain Mr. Ferguson. Having a clear line of sight to Mr. Ferguson's back, Officer Herz deployed his taser. "He went down just as picture

perfect as we are trained and I immediately went towards him and tried to help take him into custody."

The video evidence contradicts parts of Officer Herz's account. While Mr. Ferguson did push Mr. Ming to the ground, Mr. Ming stood up within seconds in clear view of the police and well before any of the officers arrived at the scene. As the officers approached, Mr. Ming and Mr. Ferguson were essentially squaring off with each other like a couple of boxers. Neither appeared to have a weapon. As the police officers arrived, Mr. Ferguson turned away from them and took a couple of steps before he was forcefully grabbed and pushed toward the ground by the police. There was no time for Mr. Ferguson to hear, understand, or respond to the command that he get on the ground. As two officers sought to physically restrain him, Mr. Ferguson suddenly dropped straight to the ground, paralyzed by the taser. Mr. Ferguson was unarmed and was not fighting with the officers when he was tasered. He is clearly visible in a video with one arm free while an officer twisted him around by his other arm.

Ms. DeGroat is visible in the videos apparently attempting to calm Mr. Ferguson when the police descended on him. She was moving toward Mr. Ferguson as he was pushed by the police when he suddenly collapsed. An officer immediately got on top of Mr. Ferguson to handcuff him. As Ms. DeGroat threw herself into the melee in defense of Mr. Ferguson, three officers went after her and forcibly took her to the pavement face first. Ms. DeGroat is seen struggling with the officers as they subdued and handcuffed her.

DeGroat's case has taken a few turns in the past several months. In May, **District Attorney Matthew Van Houten agreed to reduce DeGroat's**

**charges after reviewing the video**. However, **the felony charges resurfaced in June after the case was brought to a grand jury**.

In the order, Rowley said "in the Court's view," DeGroat "reacted instinctively to protect Mr. Ferguson in this fast moving and bewildering situation. If not for the regrettable actions of the police, she likely would not have intervened. When officers sought to restrain her, she forcefully struggled against them. Ultimately three officers were involved in forcing her to the ground face down."

He said further that the court concluded the police officers overreacted to the initial situation and "made no effort to defuse the situation."

The order notes that the district attorney's office had consented to dismissing the felony-level charges, but opposed dismissing the misdemeanors. The order published Friday dismisses all charges.

DeGroat's trial was previously planned for November. Over the course of five months, there have been several rallies and protests putting pressure on District Attorney Matthew Van Houten to drop the charges. On Friday, the pressure continued as more than 100 people gathered outside the Tompkins County Courthouse. In addition to the charges being dropped, protesters have called for the City of Ithaca to hold police accountable. The demonstration last week moved to Tioga Street, where protesters laid in the street and others drew chalk outlines around them.

• **Related: Protesters occupy entrance to Tompkins Courthouse, demand charges against Rose DeGroat dropped**

In previous statements to The Ithaca Voice, Ithaca Police Chief Dennis Nayor has said officers that night acted in accordance with the law, but added that he is nevertheless working to **strengthen the department's connection with the community**. Nayor did not respond immediately to a request for comment Friday following Rowley's order.



Demonstration in front of Tompkins County Courthouse on Friday September 20, 2019. (Jacob Mroczek/The Ithaca Voice)



Student protesters at the Demonstration for Rose on Friday September 20, 2019. (Jacob Mroczek/The Ithaca Voice)

Rowley said Friday he had no further comment outside the order.

Van Houten did not respond to a request for comment Friday but said there would be a news conference at a later date. This story will be updated if Nayor or Van Houten respond with comments.

Read the decision and order below. You can read the original omnibus motion **filed in August 2019 here**.

**Read the Decision and Order, Sept. 27, 2019**

**DeGroat Rose Interest of Ju...** by **Kelsey O'Connor** on Scribd

STATE OF NEW YORK

COUNTY COURT : COUNTY OF TOMPKINS

-------------------------------------------------------------

PEOPLE OF THE STATE OF NEW YORK,

                                   Plaintiff,               DECISION and OR

                        vs.                  Ind. No. 2019-0042

ROSE E. DEGROAT,

                           Defendant.

-------------------------------------------------------------

       Defendant Rose DeGroat is charged by indictment with Attempted Assa

Degree (2 counts), Obstructing Governmental Administration in the 2nd Degree

Resisting Arrest. By Notice of Motion filed August 26, 2019, defendant, throug

attorneys, Edward Kopko and Jerome Mayersak, seek dismissal of the indictme

furtherance of justice pursuant to Criminal Procedure Law §210.40. By Respor

September 9, 2019, the People, by Deputy District Attorney Andrew Bonavia,

dismissal of both Attempted Assault 2nd charges but oppose dismissal of the rer



misdemeanor charges.

| 1 | of 6 |

**Related Coverage:**

- **Woman in Commons case pleads not guilty after felony indictment**
- **Cadji Ferguson found not guilty of disorderly conduct in Commons case**
- **Legal cases continue for two charged in April Ithaca Commons incident**
- **Black Lives Matter Ithaca condemns police brutality and racism at local rally**
- **City releases police body camera footage of Ithaca Commons incident**
- **Charges reduced for woman charged in Commons case**
- **Prosecution of woman charged in Commons incident 'totally unwarranted,' attorney argues**
- **Three charged in 'chaotic' Ithaca Commons scuffle with police officers**

*Featured image: Demonstration in front of Tompkins County Courthouse on Friday, Sept. 20, 2019. (Jacob Mroczek/The Ithaca Voice)*



### KELSEY O'CONNOR

Kelsey O'Connor is the managing editor for the Ithaca Voice. Questions? Story tips? Contact her at koconnor@ithacavoice.com and follow her on Twitter @bykelseyoconnor. More by Kelsey O'Connor

© 2021 Always free. Always local. .

Proudly powered by Newspack by Automattic