UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROSE E. T. DEGROAT

               Plaintiff,

-against-                                  3:22-CV-507 (LEK/ML)

BENJAMIN BUCK, *et al.*,

               Defendants.

CADJI FERGUSON

               Plaintiff,

-against-                                  3:22-CV-516 (LEK/ML)

BENJAMIN BUCK, *et al.*,

               Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiffs Rose DeGroat and Cadji Ferguson (collectively, "Plaintiffs") filed these actions pursuant to 42 U.S.C. § 1983 against Defendant Police Officers Benajmin Buck, Zachary Dorn, George DuPay, and Gregory Herz (collectively, "Defendants") alleging that Defendants used excessive force and/or failed to intervene in violation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments. Dkt. No. 5 ("Complaint").[1]

---

[1] Per this Court's ruling on June 22, 2023 regarding the consolidation of 3:22-CV-507 ("Lead Case") and 3:22-CV-516 ("Member Case"), and the fact that "[t]he Complaint in each action is virtually identical and the Defendants in each case are the same," the Court will view Dkt. No. 5 in the Lead Case as the operative Complaint for the purposes of this Memorandum-Decision and Order.

Defendants now move for summary judgment, Dkt. No. 105-10 ("Motion"), and provide a statement of material facts, Dkt. No. 105-1. Plaintiff filed a response, Dkt. No. 111 ("Response"), and a response to Defendants' Statement of Material Facts, Dkt. No. 111-1 ("Response to Defendants' Statement of Material Facts" or "RDSMF"). Defendant replied, Dkt. No. 112 ("Reply") and offered a response to Plaintiffs' Statement of Additional Facts, Dkt. No. 112-1 ("Response to Plaintiffs' Statement of Additional Facts" or RPSAF").

For the reasons that follow, Defendants' Motion is granted.

## II.     BACKGROUND

### A.  Factual Background

The factual summary of this action is taken from the Complaint, the parties' statements of material facts and the attached exhibits. Disputes of material fact in the record are noted. As Plaintiffs are the non-moving party, the evidence is construed in the light most favorable to them, and all reasonable inferences are drawn in their favor. *See Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021).

*1. The Encounter Between Plaintiffs and Ming*

On or around 1:10 AM on April 6, 2019, Ms. DeGroat left Casablanca Pizza — a pizza shop located in the "Commons" in downtown Ithaca, New York — with her friends R.J., L.S., K.W., and D.S. Compl. ¶ 39. The Commons, located in downtown Ithaca, is a pedestrian-friendly area that contains several shops, restaurants, and businesses, stretching over four blocks. *Id.* ¶ 40. The group of friends planned to meet Mr. Ferguson outside of Casablanca Pizza. *Id.* ¶ 41.

As Mr. Ferguson approached the group of friends, he observed a stranger he would later learn was named Joseph Ming, "eyeing the group in a manner that Ferguson perceived to be

'suspicious.'" *Id.* ¶ 42. Mr. Ferguson and the group began walking eastward down the Commons. *Id.* ¶ 43. Mr. Ming followed and remained "very close" to the group. *Id.* ¶ 44. Ming then walked directly behind L.S., "pressing his pelvis into L.S.'s backside." *Id.* ¶45. "Ming's actions made the group, and especially L.S., very uncomfortable." *Id.* L.S. did not consent to Ming pressing his pelvis into her backside. *Id.* ¶ 46.

Mr. Ferguson informed Ming "that his predatory actions were unwelcome and non-consensual." *Id.* ¶ 48. Subsequently, "Ming swung his fist at Ferguson." *Id.* ¶ 51. "Ferguson, determining that Ming ha[d] turned violent . . . pushed Ming back." *Id.* ¶ 52. Ming proceeded to "grab[] Ferguson by the jacket, as Ferguson attempted to take it off, then proceeded to swing Ferguson by his jacket." *Id.* ¶ 54. After a few seconds of struggling, Ferguson removed his jacket and punched Ming in the face. *Id.* ¶ 55. Ming fell to the ground for a few seconds before getting back up. *Id.* ¶¶ 55–56; Dkt. No. 105-6, video "666f9elc-d0b4-493a-bd32-5d6126bbl 78f" ("Commons Video") at 02:48–03:05.

### 2. Defendants' Encounter with Plaintiffs and the Group

Shortly before Mr. Ming and Mr. Ferguson exchanged blows, Officers Buck, Dorn, DuPay, and Herz stood "at a location on the westward side of the commons." *Id.* ¶ 63. Herz notices the altercation occurring between Ming and Mr. Ferguson and begins to run towards the scene. Dkt. No. 105-9 ("Herz Deposition") at 39, 40, 43. Buck, Dorn, and DuPay follow closely behind. *See* RDSMF at 17.

The Officers did not verbally identify themselves as such when they arrived on the scene. *See* Herz Depo. at 49; RPSAF at 1–2. However, the Officers were wearing their uniforms at all relevant times. *See* Dkt. No. 105-8 ("Buck Deposition") at 7; Herz Depo. at 25; AXON Body Video x81344880 ("Dorn's Video") at 00:00:36 – 00:00:38.

3

As Herz ran towards Mr. Ferguson, "he grab[bed] hold of his taser and continue[d] to run holding it." Compl. ¶ 65. He directed Mr. Ferguson to "get on the ground!" four times, "pointing the taser directly at Ferguson." *Id.*; AXON Body Video x81169265 ("Herz's Video") at 00:00:35–00:00:40. Officer DuPay attempted to grab Mr. Ferguson. Compl. ¶ 67. Ferguson recognizes that the taser is pointed at him and attempts to move away. *Id.*; *see also* Dkt. No. 111-4 ("Ferguson Deposition") at 145. Herz trips and falls over DuPay's leg. Compl. ¶¶ 68–69; Herz's Video at 00:00:38; AXON Body Video x81344880 ("Dorn's Video") at 00:00:36 – 00:00:38. After getting up, "Herz . . . deploy[ed] his taser right into Ferguson's back." Compl. ¶ 70; Herz's Video at 00:00:42. Mr. Ferguson falls to the ground and Officer DuPay attempts to secure him. Dorn's Video at 00:00:43 – 00:00:47.

Meanwhile, DeGroat attempted to free Mr. Ferguson from Officer DuPay "believing that his arrest [was] unlawful." Compl. ¶ 73; Dorn's Video at 00:00:46. Buck then "pull[ed] DeGroat away from DuPay and Ferguson." Compl. ¶ 74. Buck then wrestled with DeGroat, "bending her background [sic] over a flowerbed in [an] attempt to pull her . . . to the ground." *Id.* ¶ 76; Dorn's Video at 00:00:48 – 00:01:05. DeGroat was then brought to the ground by Buck and Dorn. *See* AXON Body Videox81156157 ("DuPay's Video") at 00:00:45 – 00:01:05. Buck, Dorn, and Herz then restrain her. RDSMF at 26; Herz Depo. at 97–101.

While on the ground, Ferguson told DuPay, "You guys don't even know what happened." Compl. ¶ 97. DuPay retorted, "I know, the only thing I saw was you take your jacket off and attack someone." *Id.* ¶ 98; DuPay's Video at 00:02:54.

After DuPay brought Ferguson to his feet, Defendants escorted both Plaintiffs to separate police cruisers with the help of other officers. *Id.* ¶¶ 101–02. Ferguson stated: "I'm really very upset, because you guys tackled me and tased me, and I was not resisting or nothing." *Id.* ¶ 105.

4

DuPay replied by stating, "well I was the first one to grab you . . . [and] you started pulling away from me." *Id.* ¶ 106. Ferguson stated that he moved back because Herz pointed a taser at him. *Id.*

### B. Procedural Background

Plaintiffs commenced this action as separate cases in New York State court on April 5, 2022. *See* Lead Case, Dkt. No. 1; Member Case, Dkt. No. 1. Defendants removed both actions to this Court thereafter. Lead Case, Dkt. No. 1; Member Case, Dkt. No. 1. Defendants then filed motions to dismiss. Lead Case, Dkt. No. 14; Member Case, Dkt. No. 13.

On June 22, 2023, this Court made the determination, sua sponte, that the Lead and Member cases "involve[d] nearly identical questions of law and fact" and saw fit to consolidate the cases. Dkt. No. 34. Then the Court ruled on Defendants' motions to dismiss, granting and denying them in part. Dkt. No. 35 ("2023 Order").

Plaintiffs' surviving claims are: 1) DeGroat's excessive force claim against Officers Buck and Dorn; (2) DeGroat's failure to intervene claim against Officer DuPay; and (3) Ferguson's excessive force claim against Officer Herz. *Id*.

While Defendants moved to dismiss Plaintiffs' complaints for failure to state a claim, and alternatively qualified immunity, the Court declined to rule on the latter at the pleading stage. *Id*. at 23–24. Now, Defendants move for summary judgment on Plaintiffs' surviving claims, asserting only that their actions are entitled to qualified immunity. *See generally* Mot.

### III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, summary judgment cannot be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for its motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "conclusory allegations, speculation, or conjecture," *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" to support its claims, *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 133, 150 (2000). The Court "may not make credibility determinations or weigh the evidence." *Id.* Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

IV.    DISCUSSION

Defendants aver they are entitled to qualified immunity on DeGroat's and Ferguson's claims. Mot. at 2–3, 5–13. The Court will handle each in turn.

A.  DeGroat's Claims

DeGroat seeks relief on two claims: 1) excessive force against Officers Buck and Dorn; and 2) failure to intervene against Officer DuPay. Resp. at 10–13, 15–16. However, Defendants argue that qualified immunity precludes any recovery given DeGroat "attacked a police officer" and resisted arrest. Mot. at 5–8.

1.  Qualified Immunity

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson,* 555 U.S. at 232). Of the two prongs, "courts have discretion to decide which to tackle first." *Linton v. Zorn*, 135 F.4th 19, 32 (2d Cir. 2025) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (cleaned up)).

In the instant case, Defendants focus the argument for their qualified immunity defense solely on the second prong – that their conduct did not violate clearly established law. *See* Mot. at 5–8. Thus, the Court will continue its review along that path. *See Linton*, 135 F.4th at 32.

7

A right is "clearly established" when an outline of the right is "sufficiently clear" for a "reasonable official" to understand that their actions are violating that right. *Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022). As this is a pre-detention excessive force case, "the federal right at issue is the Fourth Amendment right against unreasonable seizure." *McKinney v. City of Middletown,* 49 F.4th 730, 739 (2d Cir. 2022) (quoting *Tolan v. Cotton,* 572 U.S. 650, 656). In the context of qualified immunity, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742 (collecting cases). Rather, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established," and, thus, "[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotes omitted) (emphasis in original). Simply put, a precedent need not be "'directly on point for a right to be clearly established,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Lennox v. Miller*, 968 F.3d 150, 156–57 (2d Cir. 2020) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

"Moreover, if 'officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context,' the officer is entitled to qualified immunity." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (quoting *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)). "But, if 'it is obvious that no reasonably competent officer' would have taken such action, that officer will not be immune." *Id*. (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Ultimately, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12).

With this standard in mind, the Court now turns its attention to applying the doctrine to DeGroat's substantive claims.

a. <u>Excessive Force</u>

Defendants aver they had the right to use force in arresting Ms. DeGroat following her attack on Officer DuPay, and for her continued resistance when the police attempted to detain her. Mot. at 5.

For excessive force claims brought under the Fourth Amendment "the qualified immunity inquiry is the same as the inquiry made on the merits." *James Biggs v. City of New York*, 2010 WL 4628360, at *6 (S.D.N.Y. Nov. 16, 2010) (quoting *Pub. Adm'r of Queens Cnty. ex rel. Est. & Beneficiaries of Guzman v. City of New York*, 2009 WL 498976, at *5 (S.D.N.Y. Feb. 24, 2009)). The analysis "often 'converge[s] on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful." *Id.* (quoting *Cowan v. Breen,* 352 F.3d 756, 764 n. 7 (2d Cir.2003)) (cleaned up).

To assess whether the force used was "reasonable" courts consider "the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir.2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999)). Moreover, courts "are required to make allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (internal quotes omitted). Generally, "courts are [] reluctant to recognize a constitutional violation when an injury is *de minimis,* and an officer's

involvement is limited." *Mesa v. City of New York*, 2013 WL 31002, at \*20 (S.D.N.Y. Jan. 3, 2013).

Here, the central question to be resolved is whether Officer Dorn and Buck used reasonable force when responding to Ms. DeGroat's attempt to free Mr. Ferguson from Officer DuPay. *See Fifield v. Barrancotta*, 353 F. App'x 479, 481 (2d Cir. 2009) (citing *Graham v. Connor,* 490 U.S. 386, 396–97 (1989)) (explaining that "Courts must examine whether the use of force was objectively unreasonable in light of the facts and circumstances confronting the officers"); Compl. ¶ 73; Mot. at 5–8. The Court concludes that no reasonable juror could find otherwise.

Ms. DeGroat's argument is that Officers Dorn and Buck's actions vis-a-vis "slam[ing] her to the ground, continu[ing] to wrestle with her, and ben[ding] her over a flowerbed" were "not objectively reasonable." Resp. at 11–12. But the record clearly demonstrates otherwise. In fact, there are several scenes from the Officers' body cams which show Ms. DeGroat striking and grabbing at Officer DuPay as he attempts to secure Mr. Ferguson. *See, e.g.*, Herz's Video at 0:00:42 – 0:00:47; Dorn's Video at 0:00:42 – 0:00:48. Moreover, to the extent the Officers are seen "slam[ing] her to the ground, continu[ing] to wrestle with her, and ben[ding] her over a flowerbed," this appears to be: 1) in response to Ms. DeGroat's decision to resist arrest for her attack on Officer DuPay, Dorn's Video at 0:00:45–0:01:05, and 2) a reasonable attempt to restrain Ms. DeGroat, whose actions were indisputably described as "flailing about with her arms and legs," RDSMF 25–26. Further, Ms. DeGroat's deposition testimony suggests she suffered no urgent harm in the aftermath of this incident. *See* Dkt. No. 111-3 ("DeGroat Deposition") at 258–73; *Mesa*, 2013 WL 31002, at \*20.

And finally, Ms. DeGroat fails to point to any clearly established law that allows her to be free from significant uses of force when she interferes with an arrest because she believed it was "unlawful." *See* Compl. ¶ 73. Ms. DeGroat cites to *Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015) ("*Brown I*"), for the proposition that the use of significant force (e.g., pepper spray, tasers) could be considered excessive if the Officers could have "employed different techniques in effecting the arrest." Resp. at 11–12. This relies on a misreading of *Brown I*, which disavowed the implication "that the availability of a less aggressive way of accomplishing an arrest necessarily means that the technique that was used is thereby shown to have been excessive." *Brown I*, 798 F.3d at 102–03. Additionally, as Defendants correctly note, Plaintiffs' argument "overlooks that [at the time of the acts in question] '*Brown II* found that there is no clearly established law that the use of significant force against a non-compliant but non-threatening arrestee amounts to constitutionally excessive force." Rep. at 2 (citing *Harris v. Leon*, 2023 WL 2051171, at *7 (S.D.N.Y. Feb. 16, 2023)); *Brown v. City of New York*, 862 F.3d 182, 183 (2d Cir. 2017) ("*Brown II*").

The record evidence shows that, under the circumstances, a reasonable officer would believe that Ms. DeGroat's actions were non-compliant *and* threatening. Herz's Video at 0:00:42 – 0:00:47; Dorn's Video at 0:00:42–0:01:05. Officers Dorn and Buck were well within their right to effect an arrest using the force they did. *See Mesa*, 2013 WL 31002, at *20 ("While [Plaintiff] was unarmed and a single woman, assaulting a police officer is a serious offense, and the officers therefore could reasonably believe that the 'nature and severity' of the alleged crime 'posed an immediate threat to the safety of the officer[s]') (citing N.Y. Penal Law § 120.05).

Accordingly, the Officers have qualified immunity on DeGroat's excessive force claim.

11

b.  Failure to Intervene

Plaintiffs allege that Officer DuPay "failed to intervene" to prevent Officers Buck, Dorn, and Herz's use of "excessive force being used against [Ms. DeGroat] by the other officers." Resp. at 15–16. Yet, "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (cleaned up). Since Ms. DeGroat has no excessive force claim against Officer Herz, and neither Officers Dorn nor Buck's use of force violated any of her clearly established rights, Officer DuPay is entitled to summary judgment on Plaintiffs' corresponding failure-to-intervene claim. Cf. *Conti v. Comito*, 2024 WL 1199903, at *8 (E.D.N.Y. Mar. 20, 2024).[2]

Thus, because Defendants Dorn, Buck, and DuPay are entitled to summary judgment on Ms. DeGroat's surviving claims, her action is summarily dismissed.

**B. Ferguson's Claim**

Ferguson's sole surviving claim is an allegation of excessive force against Officer Herz for "unnecessarily and unreasonably tas[ing] him." Resp. 13–15. Mr. Ferguson seems to concede that "Herz yelled at [him] repeatedly to 'get on the ground'" and that when he realized Herz was "brandishing a taser [at him]" he "instinctively moved away from" Officer Herz. *Id*. at 13. Nevertheless, he avers Herz's use of the taser violated clearly established law because, *inter alia*, Ferguson "had little time to understand what was happening to him when the officers charged

---

[2] Defendants also styled this argument as seeking summary judgment on any excessive force claim Officer DuPay might be subject to. Mot. at 11–13. On this Court's review, there is no surviving cause of action against Officer DuPay for excessive force. *See generally* Resp. Thus, the Court will not consider this argument.

him," and the officers lacked context "of the underlying incident at the time they seized Ferguson," namely that "[h]e was unarmed and not fighting with the Officers." *Id*. at 14–15.

Defendants, in turn, argue that Officer Herz is entitled to qualified immunity against Ferguson's excessive force claim. *See* Mot. at 8–11. Relying on *Harris*, they explain that as late as September 2020, "neither the Supreme Court nor the Second Circuit had clearly established that a police officer may not use a taser on a person who is resisting arrest, but is not violent or threatening." *Id*. at 9 (citing *Harris*, 2023 WL 2051171, at *6). Defendants aver that Mr. Fergusion's actions which included, *inter alia*, "running full speed at Ming and slamming Ming on to the ground," failing to "go voluntarily to the ground," and perceived resistance, justified the use of a taser, given that he was "clearly a threat and violent." Mot. 9–10.

Here, the central question for the Court to consider is whether Officer Herz violated any clearly established law in 2019 by tasing Mr. Ferguson. *See supra* Part IV (A)(1)(a); *Fifield*, 353 F. App'x 479, 481 (2d Cir. 2009) (citing *Graham,* 490 U.S. at 396–97); *Linton*, 135 F.4th at 32. The Court finds that he did not.

The record clearly shows that Officer Herz was responding to the altercation between Ming and Ferguson. Herz witnessed Mr. Ferguson "leap through the air [and] punch Mr. Ming in the face." RDSMF at 24; Herz Depo. at 67; *see* Commons Video at 02:48–03:05. Officers Herz, Dorn, Buck, and DuPay subsequently made their way to the scene of the altercation while Herz was shouting "Get down on the ground!" and had his taser brandished. *See* Mot. at 9–10; Herz's Video at 00:00:35. Mr. Ferguson recognized that three police officers were descending upon him, and he "braced [himself] to be tased." *See* Ferguson Depo. at 131–33. At this point, Officer Herz believes that Ferguson is attempting to take evasive action to avoid being restrained by the officers. *See* Herz Depo. at 47–48 (explaining that as he arrived on the scene, he "observed Mr.

13

Ferguson notice [his] presence and then attempt to evade me by what I would describe as juking to the left and the right in an effort to avoid contact with me."); *id.* at 67.

Before Mr. Ferguson is tased, Officer DuPay attempted to restrain him by grabbing his arm. Herz's Video at 00:00:37–00:00:40; Ferguson Depo. at 133. In the chaos of the situation, Officer Herz trips over Officer DuPay's leg while Officer DuPay is attempting to restrain Mr. Ferguson, RDSMF at 24–25, but in the moment, believes someone in the forming crowd "knocked [him] to the ground." *See* Herz Depo. at 67. As Officer Herz is back on his feet, his bodycam shows what can reasonably be described as Mr. Ferguson mildly resisting Officers Dorn and DuPay grabbing his arms and not complying with Officer Herz's orders to go to the ground. Herz's Video at 00:00:42; Dorn's Video at 00:00:37–00:00:46; DuPay's Video at 00:00:18–00:00:21; *see also* Compl. ¶ 106 (Officer DuPay explaining to Mr. Ferguson "well I was the first one to grab you . . . [and] you started pulling away from me."). After Herz deploys the taser, he and DuPay begin detaining Ferguson. *See* RDSMF at 25. Like Ms. DeGroat, there is no evidence that Mr. Ferguson sustained any non-superficial injuries from the encounter. Ferguson Depo. at 214–17. Most importantly, none of these facts are disputed, and Plaintiff cites to no controlling authority that establishes Officer Herz violated a clearly established law.[3]

---

[3] In their Response, Plaintiffs cite to two cases to support the proposition that the use of a taser was inappropriate against Mr. Ferguson: *Bellows v. Dainack*, 555 F.2d 1105 (2d Cir. 1977) and *People v. Smith*, 95 A.D. 2d 21 (4th Dept. 2012). Resp. at 14. Upon reviewing the cases and Defendants' Reply, the Court disagrees. *Bellows* is factually distinct from this case, largely because there, "the alleged force was used while the plaintiff . . . was seated in the back of the police car, i.e., *after* the plaintiff was secured in the officers' custody." *See Brown II*, at 191; *Bellows*, 555 F.2d at 1106 ("Officer Dainack, seated in the front of the car, then allegedly pulled the plaintiff by the scruff of the neck and struck him in the ribs while the plaintiff was still seated behind him. Officer Van Houten was the driver of the car."). Whereas in this case, Herz was actively responding to the altercation between Ferguson and Ming, and Mr. Ferguson had not yet been detained. *See* RDSMF at 24; Commons Video at 02:48–03:05.

Because a plaintiff must show, *inter alia*, that a defendant has violated clearly established law to defeat qualified immunity, Mr. Ferguson's sole claim may go no further. *See Harris*, 2023 WL 2051171, at *6. The Court recognizes and appreciates that Mr. Ferguson may have "had little time to understand what was happening to him," and that the Officers lacked a full understanding of the situation. Resp. at 14–15. Any citizen who saw the entirety of the altercation between Mr. Ferguson, his friends, and Mr. Ming might rightly be confused as to why the police only moved against him, and not Mr. Ming, especially considering Mr. Ming's alleged sexual harassment. *See* Compl. ¶¶ 42–56. The record does not suggest that the Officers seriously considered the possibility that this was a case of mutual combat, or, indeed, a situation in which Mr. Ferguson was defending his friend from sexual assault. Instead, it shows the Officers reacting to what they perceived was an emergency situation caused by Mr. Ferguson. Herz Deposition at 39, 40, 43; RDSMF at 17.

Yet, despite these legitimate concerns, the Officers' actions in this case are exactly what the law allows for. *See Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 397) (explaining that courts are "are required to 'make allowance for the fact that police officers are often forced to make split-second judgments.'"). The Officers acted based on the visual of Mr. Ferguson punching Mr. Ming and Mr. Ming falling to the ground. RDSMF at 24; Herz Depo. at 67; *see* Commons Video at 02:48–03:05. From their perspective, Mr. Ferguson was a non-compliant suspect resisting arrest. *See* Herz's Video at 00:00:42; Dorn's Video at 00:00:37–00:00:46; DuPay's Video at 00:00:21. And, at the time, there was no clearly established law which would

---

*Smith* also does little to help Plaintiffs here for exactly the reason Defendants describe: "*Smith* is not a decision from the Second Circuit or Supreme Court [and thus] has no bearing on qualified immunity." Reply at 4.

Therefore, these cases do not aid Plaintiffs' arguments against qualified immunity.

have placed Officer Herz on notice that his actions violated Mr. Ferguson's constitutional rights. In fact, as late as 2020, "neither the Supreme Court nor the Second Circuit had clearly established that a police officer may not use a taser on a person who is resisting arrest, but is not violent or threatening." *Harris*, 2023 WL 2051171, at *6 (citing *Brown II*, 862 F.3d at 190). Thus, because the events in the instant case occurred in 2019, Compl. ¶ 39, Officer Herz's actions did not violate clearly established law.

Ultimately, while reasonable officers might disagree as to whether it was necessary for Officer Herz to tase Mr. Ferguson, his actions don't evince the type of plain incompetence or malice that pierces the shield guaranteed by qualified immunity. *See Mullenix*, 577 U.S. at 12–16 (explaining that it was not "plainly incompetent" or "knowingly violat[ing] the law" for an officer to kill a driver who he knew was fleeing but also perceived to be dangerous to other officers).

Accordingly, Officer Herz is entitled to summary judgment on qualified immunity grounds and Mr. Ferguson's claim of excessive force is dismissed.

### C. Plaintiffs' Supplemental Pleadings

On May 29, 2025, Plaintiffs sought leave to file a supplemental brief in light of the Supreme Court's recent decision in *Barnes v. Felix*, 605 U.S. 73 (2025). Dkt. No. 114 ("Letter Motion"). The Court granted the Letter Motion and the parties submitted supplemental briefing. Dkt. No. 116 ("Plaintiffs' Brief"), Dkt. No. 117 ("Defendants' Brief").

Plaintiffs cite *Barnes* for the proposition that the Officers' use of force on Ferguson and DeGroat were "objectively unreasonable" because "[w]ith no other information than seeing Ferguson strike Ming" the Officers detained Ferguson instead of deescalating the situation. *See* Plaintiffs' Brief at 13–15. Defendants aver that *Barnes* is inapplicable for two reasons: 1) the

16

instant Motion is based only on qualified immunity, whereas *Barnes* focuses solely on the analysis for excessive force; and 2) the law established in *Barnes* was already precedent in the Second Circuit. Defendants' Brief at 2. Moreover, Defendants assert that Plaintiffs' reading of *Barnes* creates an "absurd result" as it effectively requires the police "to conduct a full investigation before using force when there is a violent situation afoot." *Id*. at 4. Defendants asked this Court to strike Plaintiffs' Brief. *Id*. at 2.

"[M]otions to strike are viewed with disfavor and infrequently granted." *In re Merrill Lynch & Co., Rsch. Rep. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003). As the Second Circuit has explained, "courts should not tamper with the pleadings unless there is a strong reason for doing so." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Generally, motions to strike "will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Ulla–Maija, Inc. v. Kivimaki*, 2003 WL 169777, at *4 (S.D.N.Y. Jan. 23, 2003) (internal quotation marks and citation omitted). The Court has not found a reason to do so here.

Upon reviewing the parties' materials, the Court finds Plaintiffs' supplemental arguments have *some* "bearing on the subject matter of the litigation." *Id.* at *4. (internal quotation marks and citation omitted). The current litigation involves claims of excessive force against police officers, as does *Barnes*. *Compare supra* Part IV (A), (B) *with Barnes*, 605 U.S. at 77–79. Accordingly, Defendants' motion to strike Plaintiffs' supplemental pleadings is denied.

However, after carefully reviewing Plaintiffs' briefing, the Court finds that it does not impact the Court's holding as discussed above, *see supra* Part IV (A), (B), for largely the reasons Defendants expressed.

17

First, it is not immediately clear what *Barnes* substantively adds to Plaintiffs' claims. In *Barnes*, the Supreme Court was asked to decide the proper standard of review for Fourth Amendment excessive force cases and whether courts must inquire into the "totality of the circumstances" surrounding the use of force as opposed to the more limited "moment of threat" rule applied by the Fifth Circuit. *Barnes*, 605 U.S. at 79. The majority held that "a court cannot . . . 'narrow' the totality-of-the-circumstances inquiry, to focus on only a single moment," and instead "must look . . . at any relevant events coming before." *Id.* at 83. But that holding was already a well-established standard in the Second Circuit before *Barnes* arrived. *See Singh v. City of New York*, 2024 WL 319117, at \*3 (2d Cir. Jan. 29, 2024) (explaining that courts in this Circuit review "the 'objective reasonableness' of [an Officer's] chosen course of action given the circumstances confronting them at the scene.") (citing *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)). And Defendants do not appear to argue that the "moment of threat" standard should apply to this case. *See generally* Mot.; Defendants' Brief.

Moreover, the subject of Defendants' summary judgment motion is qualified immunity. *Compare Barnes v. Felix*, 605 U.S. 73 *with* Mot. On that subject, *Barnes* has little, if anything, to offer here. Perhaps if Defendants focused their qualified immunity defense on whether there was a constitutional violation, *Barnes* might be applicable. However, the entirety of their defense rests on the fact that, at the time of the events in question, their actions did not violate any clearly established law. *See generally* Mot. Nothing in *Barnes* or in Plaintiffs' Brief overcomes that. Thus, Plaintiffs' Brief, while evincing some relevance to the current litigation, nevertheless does not advance Plaintiffs' case in any meaningful way.[4]

---

[4] The Court acknowledges Defendants' argument that Plaintiffs' reading of *Barnes* would create an "absurd result," Defendants' Brief at 4, but need not address it given *Barnes*'s weak connection to the case at bar.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment, Dkt. No. 105, is

**GRANTED in its entirety**; and it is further

**ORDERED**, that Defendants' motion to strike Plaintiffs' supplemental brief, Dkt. No.

117, is **DENIED**; and it is further

**ORDERED**, that Plaintiffs' complaint, Dkt. No. 1, is **DISMISSED without prejudice**;

and it is further

**ORDERED**, that the Clerk is respectfully directed to close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     March 26, 2026
           Albany, New York

LAWRENCE E. KAHN
United States District Judge

19